## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

TONY A. WILSON,                          :        Demand for a six-member jury trial
                                         :
          Plaintiff,                     :
                                         :
vs.                                      :                        4 4 1
                                         :        Case No.: _____
MICHELE A. GAVAGNI,                      :
in official capacity as Chairman of the  :
Florida Board of Bar Examiners,          :
                                         :
          Defendant.                     :
_____/



### COMPLAINT

### COUNT I

(General challenge to the Florida Board of Bar Examiners
Rules of the Florida Supreme Court)

1. Count I is based on diversity of citizenship Jurisdiction. Mr. Wilson asserts that the action of the Defendant over the last four years has caused Mr. Wilson to lose over $100, 000 in income.

2. Count I is brought pursuant to the Supreme Court of the United States determination that a district court does have jurisdiction to hear "a general challenge to the constitutionality" of a bar admission rule. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983).

3. Defendant MICHELE A. GAVAGNI is sued in official capacity. Futernick v. Sumpter Twp., 78 F.3d 1051, 1055 n.5 (6th Cir. 1996) ("The directors of a state

1

agency, no matter how far removed from the actions of agency employees, are proper parties to a suit for an injunction under § 1983.")

4.  Mr. Wilson seeks to vindicate his rights protected by the First and Fourteenth Amendments to the Constitution of the United States. This court has jurisdiction of this civil action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

5.  This action represents a general challenge to the Florida Board of Bar Examiners "FBBE" Rules of the Florida Supreme Court, Rule 3-11(n). The licensing procedures described herein attest to constitutional injury that can be directed at any applicant, at any time, during Florida's attorney licensing process.

6.  This action represents a general challenge to the FBBE Rules of the Florida Supreme Court, Rule 3-10. The licensing procedures described herein attest to constitutional injury that can be directed at any applicant, at any time, during Florida's attorney licensing process.

7.  A bar applicant has absolute immunity for his "lawful conduct" during court litigation, and the FBBE does not have any legal authority to impose sanctions against a bar applicant for "bad faith conduct during litigation" unless the trial court makes an express finding of bad faith and the trial court makes detailed factual findings describing the specific acts of bad faith conduct.

8.  The FBBE is given unbridled discretion to evaluate an applicant's character. Although the Rules set forth criteria that *may* be considered by licensing officials as disqualifying conduct, members of the FBBE are permitted to consider "any other conduct which reflects adversely upon the character or fitness of the

2

applicant" (Rule 3-11(n)). This permits the FBBE to approve or disapprove of one's speech without consideration of First Amendment guidelines.

9. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE may impose sanctions on a bar applicant for bad faith conduct during court litigation without the hearing-court making an express finding of bad faith conduct and without the hearing-court making detailed factual findings describing the specific acts of bad faith conduct as stated in the FBBE's Specifications. This is a violation of the bar applicant's First Amendment and due process rights.

10. The Rules of the Supreme Court of Florida, Rule 3-11(n) undefined and unlimited bad faith conduct during court litigation sanctions cover a substantial amount of genuine petitioning, and allows the FBBE to penalize such suits. This is a violation of the bar applicant's First Amendment and due process rights.

11. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE may violate a bar applicant's First Amendment right to petition the government by arbitrarily picking out "lawful conduct" of the bar applicant during court litigation, and then penalize the bar applicant for that conduct.

12. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE may deprive a bar applicant of his First Amendment rights without a compelling legal justification for finding that it has the power to impose the new bad faith conduct during litigation sanction.

13. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE may deprive a bar applicant of his First Amendment rights with only legally sufficient evidence.

3

14. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE's "competent substantial evidence" standard of proof allows the FBBE to meet its burden in denying a bar applicant's admission to the Florida Bar with considerably less evidence than required under the "preponderance of the evidence" standard of proof applied in civil cases.

15. The Rules of the Supreme Court of Florida, Rule 3-11(n) undefined and unlimited bad faith sanctions authorizes the FBBE to make findings of fact and conclusions of law that bar applicant's "lawful conduct" during court litigation is individually disqualifying conduct for admission to The Florida Bar.

16. Mr. Wilson also seeks declaratory and injunctive relief prohibiting defendants from using his First Amendment activities (right to petition the government for redress of grievances, and the right of access to courts) as a basis for denying his second application.

17. In support of his request for an injunction and declaratory judgment prohibiting defendants from considering his First Amendment activities in evaluating his second application, Mr. Wilson advances his first claim. Mr. Wilson asserts that "the practice of law is a profession of advocacy and attorney advocacy is a quintessential First Amendment activity." Therefore, Mr. Wilson argues, Florida's attorney-licensing procedure, which considers one's "moral character," is a prior restraint on a First Amendment activity and is facially unconstitutional because it lacks adequate procedural safeguards and is too vague.

18. In support of his request for an injunction and declaratory judgment prohibiting defendants from considering his First Amendment activities in evaluating his

second application, Mr. Wilson advances his second claim. Mr. Wilson claims that in practice defendants consider an applicant's prior First Amendment activity in determining whether an applicant has good moral character. Mr. Wilson cites the denial of his first application as one of four "illustrations" that evidence the defendants' practice. As Mr. Wilson's second example, a Michigan bar applicant named Dennis Dubuc was denied admission because he had been criticizing a judge. In 1993, Dennis Dubuc moved to disqualify the presiding judge, Judge Daniel Burress. During a hearing on September 27, 1995, Dubuc accused Judge Burress of engaging in a conspiracy against him. During a hearing on October 6, 1995, Dennis Dubuc told Judge Burress that he had filed criminal charges against him for conspiracy, bribery, bribery attempt, and abuse of process. In an affidavit he filed in support of his criminal charges, Dubuc attested that Judge Burress was engaged in a "conspiracy to destroy [him]," obstruction of justice, abuse of process, bribery, and attempted bribery. Dubuc v. Mich. Board of Law Examiners et al., 2003 FED App. 0313P (6th Cir.). As Mr. Wilson's three example, a law school graduate named Stephen Dean was told by a Michigan Bar official that he would be denied admission to the Bar because he picketed against his law school over classroom comments by one of his professors regarding the impeachment proceedings of former President Clinton. He contends that denying one's bar application based upon one's protected speech is unconstitutional. He therefore claims that the moral character requirement, as it is being applied, is unconstitutional. As Mr. Wilson's four example, a Florida Bar applicant named Frank J. Lawrence was denied admission for his criticism of the Florida licensing

5

system and its officials, for petitioning the government for redress of grievances, and for his involvement in Lawrence v. Van Aken (In re Florida Board of Bar Examiners), 4:04mc0032-WCS (N.D., Fla.).

19. The FBBE, through its staff, undertakes a background review of an applicant's moral character. An applicant is required to submit a complete and sworn Bar Application as a part of his or her licensing request, which provides a summary of his or her adult events and activities. Rule 3-14. Because of this requirement, and given the unlimited nature of the FBBE's review, an applicant is required to disclose his or her First Amendment activities and other lawful activities for review.

20. The FBBE conducts an investigation and determines the character and fitness of every applicant or registrant for a law license in the State of Florida. In such investigation and inquiry, the Board may obtain such information as bears upon the character and fitness of the applicant or registrant. Rule 3-21. This determination of fitness by the FBBE is conducted without any consideration of procedural safeguards concerning the scrutiny of constitutionally protected conduct. This authorizes unbridled decision-making.

21. An applicant or registrant may be requested to appear for an investigative hearing for further inquiry of his or her good moral character. At an investigative hearing, the "technical rules of evidence need not be observed." Rule 3-22. Further, in many cases, the staff of the FBBE provides Board members with adverse information not supplied to the applicants, thereby placing applicants in a position of not being able to properly address or contest evidence being used to question

6

their character. This review of fitness is conducted without any consideration of an applicant's constitutionally protected activities. This authorizes unbridled decision-making.

22. After an investigative hearing, the FBBE decides whether Specifications should be filed, charging the applicant or registrant with matters which if proven would preclude a favorable finding by the Board. Rule 3-22.5(d). Again, this review and determination of fitness is conducted without any procedural safeguards for the evaluation of applicants' constitutionally protected acts. The FBBE is free to approve or disapprove of one's speech for any reason and note that in a Specification.

23. Specifications are a formal charging document filed in those cases where the Board takes the position that "there is cause to believe" that an applicant is not qualified for admission to the Florida Bar. If the Board files Specifications, the Specifications are served upon an applicant or registrant. An applicant or registrant must respond to Specifications in the form of a sworn, notarized answer within 20 days from receipt of the Specifications. Rule 3-23.

24. The Rules allow unbridled decision-making by both attorney and non-attorney members when deciding moral character issues. Any applicant or registrant who is a recipient of Specifications is entitled to a formal hearing before the FBBE. Rule 3-23.2. At this hearing, an applicant must disprove Specifications brought by the FBBE, which are prosecuted by the FBBE General Counsel. The FBBE then decides whether or not the FBBE's General Counsel has proven the FBBE's own Specifications. This prosecution and review of fitness is conducted without any

7

procedural safeguards concerning the evaluation of applicants' constitutionally protected acts.

25. A FBBE formal hearing panel consists of members of the Board other than those who participated in the investigative hearing. Rule 3-23.2. However, at a formal hearing, the transcript of the investigative hearing, including comments made by the investigative hearing panelists, is automatically introduced into evidence. As noted above, investigative hearing panelists may be provided adverse information that is not provided to the applicants. As such, formal hearings contain information in which the applicant is denied the right to confrontation and cross-examination of "those whose word deprives [him] of his livelihood." Willner v. Committee on Character & Fitness, 373 U.S. 96, 103 (1963).

26. After the formal hearing, the FBBE makes one of four recommendations to the Florida Supreme Court, that: (1) the applicant has established his character and fitness; (2) the applicant should be conditionally admitted to the Florida Bar; (3) admission be withheld for a length of time; or (4) the applicant has not established his character and fitness. Rule 3.23.6. The procedures by which this recommendation is reached avoid constitutionally mandated safeguards and can result in constitutional injury.

27. The FBBE is not comprised wholly of members with formal legal training. Indeed, some members are laypersons. Unlike the Supreme Court of Florida which may make constitutional considerations or rulings, the FBBE cannot make constitutional rulings or declare the Rules unconstitutional. The Rules of the Supreme Court do not require members of the FBBE to make constitutional

8

rulings and the Rules do not explicate any limiting guidelines for the FBBE's scrutiny of lawful acts of applicants. Thus, Florida law authorizes unbridled decision-making regarding the evaluation of lawful acts, and the FBBE conducts itself on that basis.

28. The Rules of the Supreme Court of Florida, Rule 3-22.5(c)(d) is unconstitutional and therefore invalid, because the Rule does not impose upon the FBBE the duty to provide all bar applicants who are rejected for unfitness with adequate notice of the reasons why their quest for admission is refused. In order to satisfy due process requirements, the Board must adequately inform the bar applicant of the nature of the evidence against him. Willner, supra note 4, 373 U.S. at 107 (Goldberg, J., concurring).

29. In practice, the FBBE uses "good moral character" review, to scrutinize the adult life history of each applicant, including the applicant's protected First Amendment activities and other lawful acts.

30. The FBBE requires licensing applicants to disclose protected First Amendment activities when applying for a license to practice law in Florida. A failure or refusal to disclose this requested information in connection with the licensing process will result in an adverse recommendation by the FBBE. The FBBE use of unbridled discretion in evaluating an applicant's protected First Amendment activities has a chilling effect upon the exercise of the applicants' First Amendment rights and violates the First and Fourteenth Amendments to the Constitution of the United States.

31. The FBBE requires licensing applicants to disclose protected First Amendment activities on their applications, including any and all litigation involvement (including administrative proceedings). Yet, the Petition Clause of the United States Constitution protects against retaliation due to the filing of a grievance against the government. See, BE & K Construction Co. v. NLRB, 536 U.S. 516 (2002)(The Court noted that it has long viewed the right to sue as a form of petitioning the government that deserves First Amendment protection); see also, Hoeber on Behalf of NLRB v. Local 30, 939 F.2d 118, 126 (3rd Cir. 1991)("The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts.").

32. An applicant for licensing in the State of Florida should not be denied a license because he or she has exercised First Amendment rights or challenged unlawful or questionable governmental conduct, solely because members of the Florida licensing board decide they do not approve of what was said or done. Such an evaluation requires constitutionally mandated procedural safeguards.

33. The FBBE operates with unbridled discretion and the FBBE licensing process patently violates the First Amendment. Every person considering applying for a law license in Florida must be careful in his or her lawful actions and statements. This creates a chilling effect on other would-be applicants, who are not directly before the Court. Further it is impossible for an applicant to ascertain what lawful speech would be unacceptable to the FBBE.

10

34. The Florida licensing process lacks uniform and objective decision-making guidelines, which are required by due process or equal protection of law standards under the Fourteenth Amendment. Such an imprecise regulatory scheme is facially invalid under the void-for-vagueness doctrine and overbreadth doctrines. Gentile v. State Bar of Nev., 501 U.S. 1030 (1991). The absence of precise standards permits, and indeed invites, arbitrary decisionmaking, fails to afford notice of disqualifying conduct, and chills the exercise of constitutional rights. The failure to have objective guidelines produces differential outcomes arising from an inherently subjective assessment of character, and can easily result in constitutional injury as it has here.

35. Injury to First Amendment rights constitutes irreparable loss. The Florida attorney licensing process, in both its procedural and substantive aspects, has produced irreparable harm to the First Amendment rights of Plaintiff, and will to others, because of the chilling effect of the regulations, for which there is no adequate remedy at law.

36. A person's opportunity to pursue a career is a fundamental liberty interest, which is protected by the Due Process and Equal Protection clauses of the Fourteenth Amendment. A person's right to pursue a chosen occupation under state licensing requires standardized rules of procedure and substance so that there is uniformity in their application by the authorized decision-maker. State regulation of fundamental activities must comport with constitutional mandates, among others, for equal protection of law.

37. The evaluation of good moral character by the FBBE lacks the uniformity and precision required by due process and equal protection of law. The process lacks uniform and objective decision-making guidelines. The failure to have objective guidelines produces differential outcomes arising from inherently subjective assessment(s) of character. The Florida Supreme Court has noted the absence of such objective criteria. Florida Board of Bar Examiners Re: L.M.S., 647 So.2d 838, 839 (Fla. 1994) ("While there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character, we have said that no moral character qualification for Bar membership is more important than truthfulness and candor.") The Florida attorney licensing process, as it exists at this time, violates the First and Fourteenth Amendment.

38. The doctrine of res judicata applies to state bar admission proceedings.

39. The Rules of the Supreme Court of Florida, Rule 3-10.1(c)(5) and Rule 3-11(n) authorizes the FBBE to disregard the doctrine of res judicata in finding prior litigated conduct individually disqualifying for admission to The Florida Bar.

40. The Rules of the Supreme Court of Florida, Rule 3-10.1(c)(5) and Rule 3-11(n) authorizes the FBBE to disregard the doctrine of Full Faith and Credit in finding individually disqualifying conduct for admission to The Florida Bar.

41. The FBBE did not give Full Faith and Credit to the prior civil findings of the federal district court in the Middle District of Florida, in case number 02-00357 CV-J-32-MMH, that there were no violations of the federal court's instructions.

42. When investigating prior court litigation in which an applicant has been involved, the FBBE reevaluates conduct and issues that have been decided in prior legal

12

actions or could have been raised in the prior actions. The FBBE has no statutory or constitutional authority bestowed upon it to reevaluate and relitigate issues otherwise barred by res judicata and/or collateral estoppel in federal or Florida courts of law. Requiring an applicant to relitigate these issues or even to explain his involvement violates due process of law and the First and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

General Relief Sought

(A) That the Court grant declaratory and injunctive relief, which prohibits the Defendants' use of constitutionally protected activities or other lawful conduct as a basis for the assessment of the moral character and fitness of applicants and as a basis for denying character certification to attorney applicants, unless the FBBE follows established constitutional requirements and guidelines;

(B) That the Court issue a declaratory judgment that the FBBE's use of unbridled discretion described herein, including the absence of adequate and necessary safeguards to protect federally secured freedoms, cause the deprivation of rights guaranteed to the Plaintiff by the First and Fourteenth Amendments to the Constitution of the United States;

(C) That the Court enjoin Defendants to initiate, adopt, and otherwise implement procedures and practices to ensure that protected and lawful acts of applicants for licenses to practice law in Florida are not used as a basis for licensure denial;

(D) That the Court issue a declaratory judgment that the Defendants' practice of following a FBBE policy of concealing adverse factual information considered by the

13

Board during character reviews but not provided to the applicants is unlawful, and enjoin any future enforcement of said policy;

(E) That the Court issue a declaratory judgment that it is unlawful to follow a FBBE policy of concealing exculpatory information contained within the Defendants' files, and also declare that applicants are entitled to a full review of the investigative information contained in the FBBE files;

(F) That the Court issue a declaratory judgment that it is unlawful for the Defendants to follow the FBBE policy of denying applicants the right to confront and cross-examine those whose words are used to deny the applicants a license, and further enjoin Defendants from making character recommendations based upon information from sources or individuals immune from a subpoena;

(G) That the Court issue a declaratory judgment that it is unlawful for Defendant MICHELE A. GAVAGNI, the FBBE General Counsel, and/or their respective staff, to draft the FBBE's findings of fact and conclusions of law, and enjoin any future enforcement of said policy; Relief Specific To Plaintiff's Application for Admission.

(H) That the Court declare that Plaintiff's First and Fourteenth Amendment rights have been violated by Defendants' licensing procedures regarding Plaintiff's application;

(I) That the Court requires Defendant MICHELE A. GAVAGNI to immediately accept and process Plaintiff's reapplication, with consideration of mandated constitutional safeguards and time constraints;

(J) That the Court order Defendant MICHELE A. GAVAGNI to accept Plaintiff's reapplication to practice law without any additional costs, the $1,800 application fee for reapplication for admission based on rehabilitation, or penalties, and that Defendants be

14

enjoined from using Plaintiff's protected and lawful acts as a basis for further Specifications;

(K) That the Court enjoin Defendant MICHELE A. GAVAGNI from denying Plaintiff a license to practice law without consideration of constitutional procedural safeguards concerning Plaintiff's constitutionally protected activities;

(L) Award Plaintiff reasonable costs and attorneys' fees;

(M) Such other relief as is just and appropriate.

## COUNT II

1. Count II is based on diversity of citizenship Jurisdiction. Mr. Wilson asserts that the action of the Defendant over the last four years has caused Mr. Wilson to lose over $100, 000 in income.

2. Defendant MICHELE A. GAVAGNI is sued in official capacity. Futernick v. Sumpter Twp., 78 F.3d 1051, 1055 n.5 (6th Cir. 1996) ("The directors of a state agency, no matter how far removed from the actions of agency employees, are proper parties to a suit for an injunction under § 1983.")

3. Count II is brought pursuant to the inapplicability of the Rooker-Feldman Doctrine to the facts of this case. Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923); and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1982). The Eleventh Circuit has stated: Rooker-Feldman bars lower federal court jurisdiction where four criteria are met: (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the

15

issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." Storck v. City of Coral Springs, 354 F.3d 1307, 1310 (11th Cir. 2003). "A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000)(quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring)).

4. Mr. Wilson seeks to vindicate his rights protected by the First and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §1983. This court has jurisdiction of this civil action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

5. Mr. Wilson asserts his federal claims were not inextricably intertwined with the Florida Supreme Court's order denying Mr. Wilson's bar application, because the Rules of the Florida Supreme Court, Rule 3-11(n), unconstitutionally permitted the FBBE and the Florida Supreme Court to disapprove of 1) Mr. Wilson's petitioning the federal court without consideration of First Amendment guidelines, 2) the federal doctrine of res judicata, and 3) the doctrine of full faith and credit.

6. Although the *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing state court decisions, it does not prevent them from deciding an independent claim, albeit one that denies a legal conclusion rendered in federal court in civil case number 02-00357-cv- J-32-MMH.

16

7. The *Rooker-Feldman* doctrine does not require lower federal courts to surrender their own jurisdiction.

8. The federal court has jurisdiction to determine whether the federal doctrine of res judicata applies to Florida Board of Bar Examiners' admission proceedings, which concerns Mr. Bassett's motions for court ordered sanctions against Mr. Wilson for civil contempt in federal case number 02-00357-cv- J-32-MMH.

9. The relitigating of matters that were litigated or could have been litigated in an earlier federal suit must be recognized as a matter separate from the merits of the Florida Supreme Court denying Mr. Wilson's bar application. Thus, the Florida Supreme Court may not review and redetermine the merits of issues ruled on by the federal court in federal case number 02-00357-cv- J-32-MMH.

10. The federal court has jurisdiction to determine whether the doctrine of Full Faith and Credit applies to Florida Board of Bar Examiners' admission proceedings, which concerns the prior civil findings of the federal court, in case number 02-00357-cv-J-32-MMH, that there were no violations of the federal court's instructions.

11. The FBBE was bound to give full faith and credit to the prior civil findings and judgments of the federal court. Also, the application of the burden of proof does not preclude the application of collateral estoppel principles to prior civil findings and judgments in which the same burden of proof was applied.

12. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE violated Mr. Wilson's First Amendment right to petition the government by arbitrarily picking out "lawful conduct" of Mr. Wilson during his court litigation,

in case number 02-00357-cv-J-32-MMH, and then penalizing Mr. Wilson for that conduct.

13. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE deprived Mr. Wilson of his First Amendment rights without a "compelling state interest" for finding that it has the power to impose the new bad faith conduct during litigation sanction against Mr. Wilson.

14. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE deprived Mr. Wilson of his First Amendment rights to petition the federal court, in case number 02-00357-cv-J-32-MMH, by using the legally sufficient evidence standard of proof to deny Mr. Wilson's bar application.

15. Pursuant to the Rules of the Supreme Court of Florida, Rule 3-11(n), the FBBE's "competent substantial evidence" standard of proof allowed the FBBE to meet its burden in denying Mr. Wilson's admission to the Florida Bar with considerably less evidence than required under the "preponderance of the evidence" standard of proof applied in civil cases.

16. The FBBE's only legally sufficient evidence standard of proof violates Mr. Wilson's federally secured liberty and/or property interest that requires due process of law at each stage of the Florida attorney licensing system.

17. In prior cases, after a bar applicant had made a prima facie showing of his good moral character, the FBBE's standard of proof required the FBBE to meet its burden in denying a bar applicant's admission to the Florida Bar with clearly and convincing evidence.

18

18. The Rules of the Supreme Court of Florida, Rule 3-11(n) authorized the FBBE to
disregard the doctrine of res judicata in finding Mr. Wilson's prior court litigation
conduct was individually disqualifying for admission to The Florida Bar.

19. The Rules of the Supreme Court of Florida, Rule 3-11(n) authorized the FBBE to
disregard the doctrine of Full Faith and Credit in finding Mr. Wilson's prior court
litigation conduct was individually disqualifying for admission to The Florida Bar.

20. The FBBE did not give Full Faith and Credit to the prior civil findings of the
federal district court in the Middle District of Florida, in case number 02-00357
CV-J-32-MMH, that there were no violations of the federal court's instructions.

21. When investigating prior court litigation in which an applicant has been involved,
the FBBE reevaluates conduct and issues that have been decided in prior legal
actions or could have been raised in the prior actions. The FBBE has no statutory
or constitutional authority bestowed upon it to reevaluate and relitigate issues
otherwise barred by res judicata and/or collateral estoppel in federal or Florida
courts of law. Requiring an applicant to relitigate these issues or even to explain
his involvement violates due process of law and the First and Fourteenth
Amendments to the Constitution of the United States.

22. The doctrine of res judicata applies to state bar admission proceedings.

23. The FBBE does not dispute the fact that its' Specifications 2(C), 2(F) and 2(G)
were ruled on by the federal court when Mr. Bassett motioned the federal court to
sanction Mr. Wilson for civil contempt.

24. The FBBE does not dispute the fact that the federal court, in case number 02-00357-cv-J-32-MMH, denied Mr. Bassett's Specification 2(C), 2(F) and 2(G), ("contempt motion(s)"), against Mr. Wilson.

25. The FBBE's Specification 2(C) is barred by the doctrine of res judicata, and the First Amendment of the United States Constitution. Specifications 2(C) is based on the alleged failure of Mr. Wilson to obey a specific instruction from the trial court, in case number 02-00357-cv-J-32-MMH, that no further motions for summary judgment be filed.

   a. Mr. Bassett's filed several written Motions alleging that Mr. Wilson should be held in contempt for violating the federal court's instruction dated January 26, 2004.

   b. On Mr. Bassett's written motions that Mr. Wilson be held in contempt, Mr. Bassett bore the burden of proof. A party moving for contempt must show by clear and convincing evidence that a court's order has been violated. Mr. Bassett did not satisfy his burden.

   c. On December 21, 2004, the federal court denied Mr. Wilson's motions for summary judgment, and the federal court did not find that Mr. Wilson had violated the federal court's instruction of January 26, 2004.

   d. Thereafter, Mr. Bassett notified the Florida Board of Bar Examiners and he informed the FBBE that Mr. Wilson had knowingly violated the federal court's instruction of January 26, 2004.

   e. By using the legally sufficient evidence standard of proof, the FBBE held that Mr. Wilson had knowingly violated the federal court's instruction of

20

January 26, 2004. The Florida Supreme Court affirmed the FBBE's recommendation.

26. The FBBE's Specification 2(F) is barred by the doctrine of res judicata, and the First Amendment of the United States Constitution. Specification 2(F) is based on Mr. Wilson's alleged intentions to disobey a specific instruction from the trial court, in case number 02-00357-cv-J-32-MMH, with regard to discovery and Mr. Wilson subsequent denial of making such statements when he appeared in court.

   a. On or about February 3, 2005, Mr. Wilson noticed four DCF employees for deposition scheduled for February 17, 2005. Thereafter, motions pertaining to those notices were filed by both parties. On February 17, 2005, a hearing was held on those notices.

   b. After the February 17, 2005 hearing, Mr. Wilson served additional notices of depositions on Mr. Bassett. Mr. Bassett filed a motion with the federal court to prevent Mr. Wilson from taking the additional depositions.

   c. On March 7, 2005, during a duly scheduled motion hearing, Mr. Bassett made an oral motion to the federal magistrate that Mr. Wilson had knowingly violated her Order by stating to Mr. Bassett by telephone Mr. Wilson's intentions to disobey the federal magistrate's instructions with regard to consulting with Mr. Bassett prior to setting depositions.

   d. On Mr. Bassett's oral motion that Mr. Wilson be held in contempt, Mr. Bassett bore the burden of proof. A party moving for contempt must show by clear and convincing evidence that a court's order has been violated. Mr.

Bassett did not satisfy his burden and the federal magistrate denied his motion.

e. Thereafter, Mr. Bassett notified the Florida Board of Bar Examiners and he informed the FBBE that Mr. Wilson had knowingly violated the federal magistrate's Order by stating to Mr. Bassett by telephone Mr. Wilson's intentions to disobey the federal magistrate's instructions with regard to consulting with Mr. Bassett prior to setting depositions.

f. By using the legally sufficient evidence standard of proof, the FBBE held that Mr. Wilson had knowingly violated the federal magistrate's Order by stating to Mr. Bassett by telephone Mr. Wilson's intentions to disobey the federal magistrate's instructions with regard to consulting with Mr. Bassett prior to setting depositions. The Florida Supreme Court affirmed the FBBE's recommendation.

27. The FBBE's Specification 2(G) is barred by the doctrine of res judicata, and the First Amendment of the United States Constitution. Specification 2(G) is based on Mr. Wilson's alleged failure to consult with opposing counsel prior to setting depositions after being specifically instructed by a magistrate to do so.

a. On March 7, 2005, during a duly scheduled motion hearing, Mr. Bassett made an oral motion to the federal magistrate that Mr. Wilson had failed to consult with opposing counsel prior to setting depositions after being specifically instructed by a magistrate to do so.

b. On Mr. Bassett's oral motion that Mr. Wilson be held in contempt, Mr. Bassett bore the burden of proof. A party moving for contempt must show

22

by clear and convincing evidence that a court's order has been violated. Mr.
Bassett did not satisfy his burden and the federal magistrate denied his
motion.

c.  Thereafter, Mr. Bassett notified the Florida Board of Bar Examiners and he
    informed the FBBE that Mr. Wilson had failed to consult with him prior to
    setting depositions after being specifically instructed by a magistrate to do
    so.

d.  By using the legally sufficient evidence standard of proof, the FBBE held
    that Mr. Wilson had failed to consult with Mr. Bassett prior to setting
    depositions after being specifically instructed by a magistrate to do so. The
    Florida Supreme Court affirmed the FBBE's recommendation.

28. The FBBE's Specification 2(A) is barred by the doctrine of res judicata, and the
    First Amendment of the United States Constitution. As a general rule, the doctrine
    of res judicata, also called claim preclusion, bars parties from relitigating matters
    that were litigated or could have been litigated in an earlier suit. In re Atlanta
    Retail, Inc., 456 F.3d 1277, 1284 (11th Cir. 2006).

29. The FBBE's Specification 2(A) prejudiced Mr. Wilson, because the Board
    concluded that Specification 2(A) was individually disqualifying for admission to
    The Florida Bar.

30. When Mr. Wilson was notified by the FBBE that his application was rejected, Mr.
    Wilson did request a formal hearing.

31. The FBBE also provided Mr. Wilson with a list of prospective witnesses and it
    scheduled a hearing date.

32. Mr. Wilson did know of Mr. Bassett, however, Mr. Wilson did not know the names of defendants and what testimony might be sought from Mr. Bassett.

33. Mr. Wilson did not know of Mr. Bassett's allegation that Ms. Grant's only involvement in Mr. Wilson's termination was to hand deliver an envelope containing a letter requesting that Mr. Wilson appear at an investigatory conference. Mr. Bassett never made this claim during the court proceedings, in case number 02-00357-cv-J-32-MMH, nor did he provide the FBBE with a written statement concerning Ms. Grant, which would have provided Mr. Wilson with notice.

34. Mr. Wilson did not know of Mr. Bassett's allegation that there was no basis for including Nate Dixon as a defendant. Mr. Bassett never made this claim during the court proceedings, in case number 02-00357-cv-J-32-MMH, nor did he provide the FBBE with a written statement concerning Mr. Dixon, which would have provided Mr. Wilson with notice.

35. Mr. Wilson did not know of the Board and/or Mr. Bassett's allegation that Mr. Wilson did not conduct adequate research of a private cause of action for violations of Florida Statute § 110.227(5)(a). Mr. Bassett knew of Mr. Wilson's research and the fact that Mr. Wilson was attempting to create new law.

36. Mr. Wilson did not know of the Board and/or Mr. Bassett's allegation that Mr. Wilson did not conduct adequate research to determine if a cause of action exists for money damages for a violation of a state constitutional right. Mr. Bassett knew of Mr. Wilson's research and the fact that Mr. Wilson was attempting to create new law.

24

37. The FBBE's Specification 2(A) did not satisfy the First Amendment or due process, because the federal court, in case number 02-00357-cv-J-32-MMH, did not make an express finding that Mr. Wilson had sued Ms. Grant and Mr. Dixon in bad-faith or a finding that Mr. Wilson did not make a good-faith argument for the extension of violations for Florida Constitutional and Statutory claims.

38. The FBBE's notice for Specifications 2(M) and 2(J) were procedurally defective and they did not satisfy First Amendment or due process, because the federal court, in case number 02-00357-cv-J-32-MMH, did not make an express finding that Mr. Wilson's conduct in dealing with Mr. Bassett was done in bad-faith. Moreover, Mr. Bassett failed to inform the federal court of these accusations, and Mr. Bassett failed to inform the Board of these accusations before and after the investigatory hearing.

39. Injury to First Amendment rights constitutes irreparable loss. Mr. Wilson has passed the State of Connecticut bar, and he should not be denied admission to the Connecticut bar, because of the State of Florida's violation of his First Amendment rights.

40. Injury to First Amendment rights constitutes irreparable loss. Mr. Wilson has passed the State of New Jersey bar, and he should not be denied admission to the New Jersey bar, because of the State of Florida's violation of his First Amendment rights.

41. Injury to First Amendment rights constitutes irreparable loss. Mr. Wilson plans to pass the State of Pennsylvania's bar in July 2008, and he should not be denied

admission to the Pennsylvania bar, because of the State of Florida's violation of his First Amendment rights.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

General Relief Sought

(A) That the Court grant declaratory and injunctive relief, which prohibits the Defendants' use of constitutionally protected activities or other lawful conduct as a basis for the assessment of the moral character and fitness of applicants and as a basis for denying character certification to attorney applicants, unless the FBBE follows established constitutional requirements and guidelines;

(B) That the Court issue a declaratory judgment that the FBBE's use of unbridled discretion described herein, including the absence of adequate and necessary safeguards to protect federally secured freedoms, cause the deprivation of rights guaranteed to the Plaintiff by the First and Fourteenth Amendments to the Constitution of the United States;

(C) That the Court enjoin Defendants to initiate, adopt, and otherwise implement procedures and practices to ensure that protected and lawful acts of applicants for licenses to practice law in Florida are not used as a basis for licensure denial;

(D) That the Court issue a declaratory judgment that the Defendants' practice of following a FBBE policy of concealing adverse factual information considered by the Board during character reviews but not provided to the applicants is unlawful, and enjoin any future enforcement of said policy;

(E) That the Court issue a declaratory judgment that it is unlawful to follow a FBBE policy of concealing exculpatory information contained within the Defendants' files, and

26

also declare that applicants are entitled to a full review of the investigative information contained in the FBBE files;

(F) That the Court issue a declaratory judgment that it is unlawful for the Defendants to follow the FBBE policy of denying applicants the right to confront and cross-examine those whose words are used to deny the applicants a license, and further enjoin Defendants from making character recommendations based upon information from sources or individuals immune from a subpoena;

(G) That the Court issue a declaratory judgment that it is unlawful for Defendant MICHELE A. GAVAGNI, the FBBE General Counsel, and/or their respective staff, to draft the FBBE's findings of fact and conclusions of law, and enjoin any future enforcement of said policy; Relief Specific To Plaintiff's Application for Admission.

(H) That the Court declare that Plaintiff's First and Fourteenth Amendment rights have been violated by Defendants' licensing procedures regarding Plaintiff's application;

(I) That the Court order Defendant MICHELE A. GAVAGNI to accept Plaintiff's reapplication to practice law without any additional costs, the $1,800 application fee for reapplication for admission based on rehabilitation, or penalties, and that Defendants be enjoined from using Plaintiff's protected and lawful acts as a basis for further Specifications;

(J) That the Court enjoin Defendant MICHELE A. GAVAGNI from denying Plaintiff a license to practice law without consideration of constitutional procedural safeguards concerning Plaintiff's constitutionally protected activities;

(K) Award Plaintiff reasonable costs and attorneys' fees;

(L) Such other relief as is just and appropriate.

27

Dated: July 14, 2008

Respectfully submitted:

Tony A. Wilson
603 Mulberry Street
Milton, DE 19968
302-853-2620

Tony
603 Mulberry Street
Milton, DE 19968

7007 2680 0001 7615 5784

CERTIFIED MAIL

7007 2680 0001 7615 5784

$4.89

U.S. District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

4 4 1

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Tony A. Wilson

## DEFENDANTS
Michele A. Gavagni

**(b)** County of Residence of First Listed Plaintiff  Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Florida
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability  ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander  ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability  Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine  **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product  ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability  ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability  ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting  ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment  Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/  **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations  ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare  ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment  ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities -  ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Violation of 1st Amendment and 14th Amendment and liberty interest

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE

DOCKET NUMBER

DATE 7/14/08

SIGNATURE OF ATTORNEY OF RECORD
Tony A. Wilson  Pro Se

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE